# Schacklett & Glyde's Appeal.

A writ of foreign attachment in Pennsylvania, executed upon *real estate*, binds the same from the time of its execution and before judgment, as well against subsequent judgments as against purchasers and mortgagees.

THIS was an appeal from the decree of the Court of Common Pleas of *Greene county*, distributing the proceeds of the sheriff's sale of the real estate of Robert Jones. Robert Jones was a resident of Cincinnati, to which place he removed from Greene county. Schacklett & Glyde issued a foreign attachment against him to No. 22 of March term, 1847, which was duly executed on the 18th January, 1847, upon the real estate of the defendant in the county of Greene. On the 22d of January, 1847, an appearance by counsel, and pleas were entered for the defendant. At June term, 1847, the cause was set down for trial by the plaintiffs, when it was continued by the court upon the application of the defendant. It was again put upon the trial list for September term, 1847, by the plaintiffs, when it was continued a second time, upon a like application. At *November term*, 1848, the cause was reached for

[Schacklett & Glyde's Appeal.]

trial, when a verdict and judgment were rendered for the plaintiffs. *In the mean time* attachments were sued out by others, which were executed upon the same real estate upon which the attachment of Schacklett & Glyde was laid, and judgments were also confessed by Jones, as follows:

Duvall, Keighler & Co., No. 46, May term, 1848. Foreign attachment, executed by defendant April 28, 1848. Judgment confessed by defendant, *June* 20, 1848, $587.37.

John and James Sleven, No. 11, August term, 1848. Judgment confessed and entered, *May* 12, 1848, $2036.64.

Joseph Dunlap, for himself and in trust for others, No. 12, August term, 1848. Judgment confessed and entered, *May* 12, 1848, $900.

Duvall, Keighler & Co., No. 50, August term, 1848. Judgment confessed and entered, *June* 20, 1848, $479.90.

The real estate, upon which the attachment of Schacklett & Glyde was executed, was sold under their judgment, and an auditor appointed to distribute the proceeds.

The question presented for the decision of the auditor was, whether a writ of foreign attachment, regularly executed, was a lien upon the real estate attached?

The auditor decided that the act of June, 1836, was the foundation of the process issued in this instance, and as that act limits the lien of a foreign attachment executed upon real estate, so as to bind the same as against *purchasers and mortgagees* from the time of the execution of the attachment, that, therefore, the judgment of Schacklett & Glyde did not acquire a priority of lien.

The report of the auditor was excepted to, in not appropriating the fund to the attachment and judgment of Schacklett & Glyde, but the exception was overruled by the court, and the report confirmed.

It was assigned for error:—That the court erred in not directing the application of the fund to the attachment and judgment of Schacklett & Glyde.

The 50th section of the act of 13th June, 1836, relative to the commencement of actions, provides, with respect to foreign attachments, that "the goods and effects of the defendant in the attachment, in the hands of the garnishee, shall, after such service, be bound by such writ, and be in the officer's power; and, if susceptible of seizure or manual occupation, the officer shall proceed to secure the same, to answer and abide the judgment in the case; unless the person having the possession thereof shall give security therefor."

It is provided in section 51st, relating to real estate:—" Every writ of attachment executed upon real estate, shall bind the same *as against purchasers and mortgagees*, from the time of the execu-

[Schacklett & Glyde's Appeal.]

tion thereof; and it shall be the duty of the sheriff to file in the office of the prothonotary of the court, a description of the property attached, within five days after he shall have made the attachment; which description shall be entered by the prothonotary on his docket, and the names of the parties, with the date of the execution of the writ, and the amount of the bail required, shall also be entered by him on his judgment docket."

The 64th section provides that "it shall be lawful for any defendant in an attachment, instead of giving bail or security at his election, at any time before judgment obtained in the attachment, to cause an appearance to be entered for him, and to take defence to the action ; in which case, the action shall proceed as if commenced by a summons; but the attachment shall, nevertheless, continue to bind the estate or effects attached, as in other cases, unless judgment be rendered for the defendant in such attachment; and if judgment be rendered for the plaintiff, such judgment shall have the like force and effect as in case of an action commenced by a summons," &c.

The case was submitted on the printed arguments.   *T. & W. McKennan* being for appellants ; and *Downey* and *Black*, for appellees.

On the part of the appellants, it was contended, that before the act of 1836, lands in Pennsylvania were susceptible of seizure on foreign attachment ; that a lien in favor of the attaching creditor, as against a subsequent judgment, was a necessary and recognised incident of such seizure ;' that the act of 13th of June, 1836, does not, by express enactment, alter the law and postpone this lien to that of a subsequent judgment ; and that, to give the act this effect by construction, would go far to defeat the object of the proceeding : 1 *Dal.* 376; 4 *id.* 55; 2 *id.* 93; *Ser. on Att.* 73; 3 *Yeates* 285; 3 *Bin.* 463; 9 *Watts* 157; 4 *W. & Ser.* 345.   That the act of 1836 did not provide that the land attached should be bound *only* as against purchasers and mortgagees ; but that they should be affected with notice of its existence.

On the part of the appellees, it was not disputed that lands were liable, before the act of 1836, to attachment; but that the question was as to the *date* of the lien.   That, at the time of the passage of the law of 1705, lands were regarded as chattels, for all purposes, and could be levied on and sold as such.   This continued to be the law until 1759, when it was enacted that lands could only be sold after condemnation, &c.   It was under this state of things that the act of 1705 was passed, which was construed to embrace lands.   There is nothing in any of these acts, prior to 1836, nor in any of the adjudicated cases, that recognises the doc-

trine insisted on by the appellant. Doubtless, a lien attached as to personal property, arising from its changeable nature; and the officer, if possible, was to take actual possession of the goods attached. But this very fact argues that there was nothing in the policy of the law that required the application of the rule *to real estate.* The lien of judgments commencing from the date of the rendition thereof, there was no reason for departing from this uniform rule in favor of attaching creditors.

Such being the law prior to 1836, the legislature revised and reduced the proceeding in foreign attachment to a well-ordered system. That, if the legislature did not intend to make a distinction between personal property and real estate, as to the date of the lien, the 51st section of the act of 1836 was useless. That if lands were goods and chattels, they would have been embraced in those terms; but the object in the passage of the 51st section was, as to real estate, to bind it as against purchasers and mortgagees only.

That the death of the defendants at any time before final judgment would dissolve the attachment and release the property: 4 *Dal.* 60; 8 *W. & Ser.* 219.

The opinion of the court was delivered by

GIBSON, C. J.—It is an undoubted fact that the framers of the act of 1705 intended to exempt land from attachment; but as there was no reason for an exemption, as land was liable to execution as a chattel, and as the language of the act was not imperative, though its details were adapted to cases of garnishment, the courts made no distinction. Nor ought they to have done otherwise; at least they did not. The assertion of counsel in McClenachan *v.* McCarty, 1 *Dal.* 376, and Ludlow *v.* Bingham, 4 *Dal.* 55, uncontradicted as it was in either case by the opposing counsel or the court, is proof of the contemporaneous construction. Mr. Justice SERGEANT expresses a belief, in his Treatise, p. 63, that many titles depend on sales by execution on judgments in foreign attachment. As land was not mentioned in the statute, it was not expressly said that an attachment should bind it; but lien was attributable to the execution of the writ as a necessary consequence of a common law principle which creates it whenever property is seized to make satisfaction. A levy on a *testatum* execution binds the land, though the judgment does not; and it was held in Todd *v.* McCulloch, 3 *Pa. Rep.* 404, and Brown *v.* Campbell, 1 *Watts* 41, that the lien of an execution levied on a particular tract, survived the lien of the judgment. Though a judgment does not bind a personal chattel, an execution does; and as land is a chattel for purposes of satisfaction, it may be bound by the common law lien of an execution independent of the lien of the judgment by construction of the statute of Westminster the second. The primary intent of a

[Schacklett & Glyde's Appeal.]

foreign attachment was doubtless to compel the debtor to put in bail, and, till that was done, the property attached was bound, and so far as it was involved, it answered the purpose of an appearance; in which respect the execution of an attachment is a species of levy in anticipation of the judgment. Since the act of 1836, which allows him to enter a common appearance and defend without dissolving the attachment, the primary intent is to sequestrate the property. But it was not intended that a common appearance should impair the lien, or it would have been discharged as well in favor of mortgagees and purchasers as of judgment creditors. The case of a creditor who can raise money on a hypothecation of his land by judgment as readily as by mortgage, is as distinctly within the mischief intended to be prevented, as the case of a mortgagee or a purchaser. But the act of 1836, which expressly declares and defines the lien, restricts it to protection against mortgagees or purchasers, in terms. "Every writ of attachment executed on real estate," it is said, "shall bind the same against purchasers and mortgagees;" and judgment creditors are neither. The clause, however, is but another proof that every codification of the law must necessarily be lame and imperfect, though executed by the ablest hands. The case of a judgment creditor is not within the letter of it, but it is within its equity; and the letter would die did not construction come to its assistance. It would be eluded by a very obvious and simple contrivance—a judgment acknowledged for money borrowed. The interpretation necessary to frustrate it, is not more strained than that which was put on the act of 1798, to limit the duration of liens by judgment *inter vivos*, which, though the declared object of it was the protection of purchasers, was extended by construction to the protection of subsequent judgment creditors. The difference here is, that the protection is against them. To prevent the machinery of a code from cutting the merits of particular cases to pieces, it is necessary that it be fitted, its mistakes corrected, and its deficiencies supplied, by judicial interpretation, after experience has disclosed them: without which it would work badly, or not at all.

Decree reversed; and ordered that the fund be applied to the appellant's judgment in the first place; and that the residue, if any, be applied to the other judgments in their order.